UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| NINTENDO OF AMERICA INC., a Washington corporation, | Case No. |
| Plaintiff, | **COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** |
| v. | |
| ESTEPHANY VALLECILLO, a.k.a. Stephy Sanrio, d/b/a www.hackyourconsole.com, | |
| Defendant. | |

## COMPLAINT

Plaintiff Nintendo of America Inc. ("NOA"), by and through its counsel, on personal knowledge as to its own actions and on information and belief as to the actions, capabilities and motivation of others, hereby alleges as follows:

1.      Defendant owns and operates a business that is built entirely on the brazen and large-scale infringement of NOA's highly valuable intellectual property.  Through her online business, "www.HackYourConsole.com," Defendant makes and distributes to customers throughout the globe a vast number of unauthorized copies of NOA's enormously popular video games.  Through this same business, Defendant also imports, markets and traffics in devices that are designed to circumvent the technological protection measures built into NOA's enormously popular handheld video game systems, including the Nintendo DS, Nintendo DS Lite, Nintendo DSi, and Nintendo DSi XL video game systems, as well as the Nintendo 3DS and Nintendo 3DS XL video game systems (collectively, the "Nintendo handheld systems").  These circumvention devices are marketed and sold by Defendant under brand names, including, but not limited to,

Acekard 2i, DSTWO, R4i Gold, R4i RTS Lite 2013, R4i-SDHC 3DS RTS, and R4 SDHC Dual Core. Because these devices are used to play pirated video games on the Nintendo handheld systems – indeed, Defendant openly markets them as such and offers online tutorials to instruct users on how to use these devices specifically to play pirated copies of video games – these devices are colloquially known, and are collectively referred to herein, as "Game Copiers."

2.     Defendant also provides a service to users of NOA's enormously popular Wii video game console (the "Wii") by which Defendant, for a fee, will modify the hardware and/or software on the Wii to circumvent the technological protection measures built into the console, and thereby to allow users to play pirated copies of video games on the Wii. Along with this service – known as Wii "modding" or "hacking" – Defendant makes and distributes to customers "game bundles," each of which contains hundreds of unauthorized copies of copyrighted video games designed for play on the Wii.

3.     Defendant's unauthorized reproduction and distribution of Nintendo's copyrighted video games, her importation, marketing, and sale of Game Copiers, her Wii "modding" services, and her use of NOA's registered trademarks and copyrights in connection with those actions, has damaged NOA, infringes and threatens irreparable injury to NOA's intellectual property rights, and violates the Copyright Act, 17 U.S.C. § 101 *et seq.*, the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.*, the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and Section 501.204 of the Florida Statutes, entitling NOA to the relief sought herein.

## THE PARTIES

4.     NOA is a Washington corporation headquartered in Redmond, Washington. NOA is a wholly-owned subsidiary of Nintendo Co. Ltd. ("NCL"), a Japanese company headquartered in Kyoto, Japan (collectively, NOA and NCL are referred to herein as "Nintendo"). NOA is responsible for the marketing and sale of Nintendo's products, and the

enforcement of Nintendo's intellectual property rights, in the Western Hemisphere.  NCL develops and manufactures, and NOA markets and distributes, electronic video game systems, games, and accessories.

5.     Defendant Estephany Vallecillo is an individual who, on information and belief, resides in this District.  On information and belief, Defendant is also known as Stephy Sanrio, and does business as www.HackYourConsole.com and www.facebook.com/HackYourConsole (hereinafter "the Websites").  Through the Websites, Defendant is engaged in the businesses of: (a) importing, marketing, and trafficking in, among other things, Game Copiers, and (b) modifying Wii consoles to circumvent technological protection measures in the consoles and thereby to enable users to play pirated copies of video games on the consoles.  Defendant makes and distributes unauthorized copies of Nintendo's copyrighted video games along with her various product and service offerings, and also uses Nintendo's registered trademarks and copyrights in connection with the Websites.   Defendant personally benefits from all such activities.

6.     On information and belief, Defendant owns, operates, or otherwise controls the Websites, personally participated in or had the right and ability to direct and control the wrongful conduct alleged in this Complaint, and derived direct financial benefit from that wrongful conduct.

**JURISDICTION AND VENUE**

7.     The Court has subject matter jurisdiction over the claims alleged herein pursuant to 28 U.S.C. §§ 1331 (federal question), 1367 (supplemental), 1338(a) (trademark and copyright), and 1338(b) (related claims of unfair competition) and 17 U.S.C. §1203 (DMCA).

8.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1400(a) because a substantial part of the infringing acts occurred in this District, and because Defendant resides and may be found in this District.

9.     This Court has personal jurisdiction over Defendant because Defendant resides in or does business in this District.

## FACTS COMMON TO ALL CLAIMS

### NINTENDO'S INTELLECTUAL PROPERTY AND PRODUCTS

10.     Nintendo is a famous brand and Nintendo video game systems (such as the Nintendo DS, Nintendo DS Lite, Nintendo DSi, Nintendo DSi XL, Nintendo 3DS, Nintendo 3DS XL, and Wii) are well known and loved among consumers in the United States and abroad. Many of the games offered by Nintendo involve its famous Nintendo characters, including the Mario and Luigi characters that appear in Nintendo's SUPER MARIO BROS. games.  In fact, Nintendo's Mario character has been referred to as one of the most famous video game characters in history.  Nintendo has received a significant number of copyright and trademark registrations worldwide covering the Mario, Luigi and Yoshi characters.  Other well-known Nintendo games and characters include Mario Kart, Pokémon, Donkey Kong, and The Legend of Zelda.

11.     The popularity of Nintendo's video game systems, games, and characters is the result of substantial creative and financial investment in product and game development, intellectual property, and marketing.  Nintendo has received many awards for its pioneering contributions to the video game industry and is an acknowledged leader in the field.  Nintendo has earned tremendous consumer awareness and goodwill through its commitment to

developing innovative, fun, and exciting video game systems and games, and Nintendo video game systems and games are enjoyed by tens of millions of consumers in the United States and abroad.

12.     Nintendo has made substantial investments in the development, marketing, and promotion of its innovative products.  Nintendo has acquired intellectual property and authorizes licensees who create and publish many popular video games specifically and exclusively for play on Nintendo video game systems, including the Nintendo handheld systems and the Wii console. Nintendo video games can take years and millions of dollars to develop.

13.     NOA holds copyright and trademark rights in and to various Nintendo video games, video game systems and video game characters, including, without limitation, those listed at Exhibits A (copyright) and B (trademark).

14.     Among Nintendo's video game systems are the enormously popular Nintendo DS and Nintendo 3DS handheld systems.  These systems are proprietary dual-screen handheld portable video game systems featuring a clamshell design with two LCD screens inside, the bottom one a touchscreen.  The original version, the Nintendo DS, was released in the United States in 2004. The Nintendo DS Lite, a slimmer, brighter, and more lightweight version of the Nintendo DS, was released in the U.S. in June 2006.  Another version, the Nintendo DSi, was released in the U.S. in April 2009 and added multimedia features, cameras, and other enhancements, and the Nintendo DSi XL, which added still more enhancements, was released in March 2010.  The most recent versions are the Nintendo 3DS (*see* Fig. 1) and the Nintendo 3DS XL, released in 2011 and 2012, respectively, which added a number of additional features and functionality.  The Nintendo DS and 3DS family of handheld systems has enjoyed immense popularity.

**Fig. 1**



15.     A user plays a video game on the Nintendo DS and 3DS handheld systems by inserting an authorized game cartridge (referred to herein as "Nintendo Game Card") into the Nintendo handheld system for game play.  Nintendo does not make any of its video game software available for download on the Internet, except through its proprietary systems.  Besides the Wii console's proprietary *Virtual Console* and *WiiWare* services, the *DSiWare* service for the Nintendo DSi handheld system and the eShop for the Nintendo 3DS system, Wii and Nintendo DS handheld video game software is distributed only in optical disc or plastic game card formats. NOA does not authorize and has never authorized the copying or downloading of Nintendo video games onto devices, such as Game Copiers, that mimic authorized Nintendo Game Cards and bypass the technological measures that protect the Nintendo handheld system and the rights of NOA as a copyright owner.  NOA does not authorize and has never authorized Nintendo video games to be copied onto personal computers or to be downloaded from personal computers to devices like Game Copiers.

### NINTENDO'S EFFORTS TO PROTECT
### ITS INTELLECTUAL PROPERTY RIGHTS

16.     The popularity of the Nintendo video games and handheld systems has made Nintendo the target of intellectual property pirates, who benefit from Nintendo's innovation and

investment by making unauthorized copies of Nintendo video games, or by creating (and profiting from) the means by which others can play pirated copies of Nintendo video games on a Nintendo handheld system.  Game Copiers are the means for playing pirated games on the Nintendo handheld systems.

17.    Illegal copying of video game software is an international problem.  Nintendo has taken many steps to halt the illegal copying, marketing, sale, and distribution of Nintendo video games designed to be played on the Nintendo handheld systems.  For example, Nintendo supports law enforcement authorities who target Internet piracy and those distributing game copying devices around the world.  Nintendo has also taken numerous other enforcement actions in countries around the world to combat the sale of game copying devices.

18.    Nintendo's efforts have included registration of the intellectual property rights in and to its video game systems and software in the United States and around the world.  In addition, Nintendo protects and enforces its rights through legal actions brought around the world to stop individuals and companies from trafficking in Game Copiers.  In fact, on information and belief, the United States Customs and Border Protection has already determined that Game Copiers that circumvent Nintendo's technical protection measures are in violation of 17 U.S.C. § 1201.

19.    Nintendo also employs a number of measures to protect and control access to its copyrighted works.  As to the Nintendo handheld systems, these include both design-based and technological measures.  Nintendo designed the Nintendo handheld systems so that they will play only game cards that have a particular shape, with unique external geometry and electrical connections.  Nintendo also built technological protection measures into the Nintendo handheld systems.  These technological measures implement a process by which commands and data are exchanged between the Nintendo handheld system and the game card that is inserted into the

Nintendo handheld system for play.  Multiple copyrighted programs are repeatedly accessed during the operation of the Nintendo DS and Nintendo 3DS protection systems and the game play that occurs if the protection measures are passed.  The technological measures of the Nintendo handheld systems ensure that even if a user inserts into the Nintendo handheld system a game card that fits perfectly into the uniquely-shaped Nintendo DS or Nintendo 3DS card slot, unless the game card also has the software necessary to pass (or to circumvent) the Nintendo handheld system's technological protection measures, the game card cannot be played on the Nintendo handheld system.

### DEFENDANT'S INFRINGING ACTIVITIES

20.     Defendant, through the Websites, displays Nintendo's registered trademarks and copyrights in connection with the marketing, promotion and other conduct of Defendant's business.

21.     The logo for Defendant's online business, www.HackYourConsole.com, prominently includes within it a copy of the famous "Mario" character, in which Nintendo holds both federally-registered trademarks and copyrights, as follows:



Defendant's reproduction, distribution and display of this trademarked and copyrighted character is without NOA's authorization or consent, and it implies and confuses consumers into believing that there is some sponsorship, affiliation, or endorsement of Defendant's business by Nintendo.

22.     Defendant, as a regular part of her business, reproduces and distributes unauthorized copies of hundreds of copyrighted video games intended for play on Nintendo systems.  For example, as a supplement to her services of "modding" Wii consoles, Defendant,

through the Websites, advertises that she will "load hard drives with all the newest and most popular games."  The www.HackYourConsole.com website includes the following image, which includes not only the famous trademarked and copyrighted Mario character, but also advertises Defendant's unauthorized reproduction and distribution of "hundreds of Wii games," "250 games in one card," including "[N]intendo" and "Super [N]intendo" games:



Similarly, Defendant lists on her Website the pirated copies of video games that she routinely provides to her customers in connection with her distribution of the "R4 Dual Core 1600+ Games bundle card" or her provision of Wii modding services.  Defendant's lists of these games, which include many video games in which Nintendo holds copyrights, are attached as Exhibit C hereto.

23.     Defendant markets, sells and otherwise traffics in, and on information and belief also imports, Game Copiers.  The Game Copiers enable those who use them to download games to portable memory storage devices and to circumvent the technological measures employed by Nintendo to control access to copyrighted works and to protect its rights as a copyright owner.

24.     Game Copiers employ a number of components, including (1) a game card (referred to herein as the "Game Copier Card") that is substantially the same shape, and has substantially the same electrical connection configuration, as Nintendo's proprietary Nintendo Game Cards, so that a Game Copier Card fits perfectly in the Nintendo handheld system and resembles an authorized Nintendo Game Card; and (2) a portable memory device (or instructions to purchase one) that can hold multiple pirated Nintendo video games and that is inserted into the Game Copier Card for game play.  Defendant sells Game Copiers that have unauthorized copies of Nintendo data that is necessary to bypass Nintendo's technological protection measures.

25.     When Game Copiers are used as Defendant instructs, and as required by the products in which Defendant traffics, they bypass Nintendo's technological protection measures and gain the same access to the Nintendo handheld system, and to certain of Nintendo's copyrighted programs, as an authorized Nintendo Game Card would have.

26.     Game Copier Cards are specifically designed to accommodate portable memory devices that hold enormous amounts of data.  Consequently, hundreds of pirated games may be downloaded onto just one Game Copier card, which then allows the user to play any of these pirated games on a Nintendo handheld system.  Defendant includes pirated copies of hundreds of video games, many of the copyrights in which are held by Nintendo, in each of the Game Copier Cards that she markets, sells, or otherwise traffics in.

27.     When Game Copiers are used as instructed by Defendant, and as required by the products she traffics in, they will cause the following federally registered Nintendo logo to appear on the screen of the Nintendo handheld system:



28.     Defendant's display of this trademarked logo is without NOA's authorization or consent, and it implies and confuses consumers into believing that there is some sponsorship, affiliation, or endorsement by Nintendo.

29.     Defendant has also configured the Game Copiers that she markets, sells and otherwise traffics in to display a variety of other logos, words or images in which Nintendo also holds federally registered trademarks and copyrights.  For example, Defendant includes a video tutorial for the use of the R4 Dual Core Game Copier on a Nintendo 3DS XL handheld system which, when used as instructed by Defendant, causes the name and logo of a video game called "Metroid Prime Hunters" to appear on the screen of the handheld system.  Defendant's display of this and other trademarked logos is similarly without NOA's authorization or consent, and it implies and confuses consumers into believing that there is some sponsorship, affiliation, or endorsement by Nintendo.

30.     Nintendo has never authorized the manufacture, distribution, or use of any Game Copiers, and the Game Copiers at issue in this case were not authorized by Nintendo or on its behalf.

31.     Defendant actively encourages her customers to use the Game Copiers to play pirated copies of video games in which Nintendo holds valuable intellectual property rights.  For example, through the Websites, Defendant provides several text and video tutorials explaining how to use the Game Copiers.  In each of Defendant's video tutorials, which feature Defendant herself demonstrating and explaining the use of the Game Copiers, Defendant illustrates the use of the Game Copiers by playing a pirated copy of a copyrighted video game, including games in which Nintendo holds copyrights.  Similarly, Defendant cautions her customers to avoid updating their handheld systems expressly to thwart Nintendo's antipiracy protections:  "Don't ever update your system – Nintendo blocks all [Game Copiers] with new updates!!"

32.     Defendant provides services of "modding" Wii consoles to enable users expressly to play pirated copies of copyrighted video games on their Wii consoles.  As part of her marketing of these services, Defendant advertises that users can "save money" by modifying their Wii consoles because "instead of buying the games that is [sic], like $30 or $40," the user can simply download pirated copies of the games online for free and play them on the modified Wii.

33.     On information and belief, Defendant has derived significant profit and financial benefit from her involvement in the importation of, marketing of, and trafficking in Game Copiers, as well as from her reproduction and distribution of pirated copies of video games, and from her modification of Wii consoles .  Defendant knew or should have known that her reproduction and distribution of unauthorized copies of Nintendo video games, her importation, marketing of and trafficking in Game Copiers, and her modification of Wii consoles, infringed Nintendo's intellectual property rights.  Defendant's past and ongoing infringement of those rights has been willful and deliberate.

## CAUSES OF ACTION

## COUNT ONE

### DIRECT COPYRIGHT INFRINGEMENT
### (17 U.S.C. §§ 106 *et seq.* and § 501)

34.     NOA realleges and incorporates by reference paragraphs 1-33.

35.     NOA owns numerous registered copyrights related to Nintendo video games and Nintendo characters, including, without limitation, those identified at Exhibit A.  These copyrights are in full force and effect and are enforceable by NOA.

36.     Defendant regularly reproduces and distributes unauthorized copies of Nintendo video games as part of "game bundles" that Defendant installs on Game Copier Cards and on the

hard drives of modified Wii consoles, which Defendant distributes to her customers in the United States and abroad.

37.     Defendant also uses NOA's copyrighted characters, including without limitation such famous characters as Mario and Pikachu, throughout the Websites to promote her business of selling Game Copiers, reproducing and distributing pirated copies of video games, and modifying Wii consoles.

38.     The foregoing acts of Defendant constitute direct infringement in violation of NOA's exclusive rights in its copyrighted works under 17 U.S.C. § 106.

39.     The foregoing acts of infringement by defendant have been willful, intentional and purposeful, in disregard of, and indifferent to, NOA's rights.

40.     As a direct and proximate result of defendant's infringement of NOA's exclusive rights under copyright, NOA is entitled to damages as well as defendant's profits pursuant to 17 U.S.C. § 504(b).

41.     Alternatively, NOA is entitled to the maximum statutory damages, in the amount of $150,000 per infringement, pursuant to 17 U.S.C. § 504(c), or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

42.     NOA further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

43.     Defendant's conduct is causing, and unless enjoined and restrained by this Court will continue to cause, NOA great and irreparable injury that cannot fully be compensated for or measured in money.  NOA has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, NOA is entitled to a preliminary and permanent injunction prohibiting further infringements of its exclusive rights under copyright.

**COUNT TWO**

## SECONDARY COPYRIGHT INFRINGEMENT
### (17 U.S.C. §§ 106 *et seq.* and § 501)

44.     NOA realleges and incorporates by reference paragraphs 1-43.

45.     Customers of Defendant's business have infringed, and continue to infringe, NOA's copyrights, including without limitation those copyrighted works identified in Exhibit A, without NOA's authorization in violation of the Copyright Act, 17 U.S.C. § 106.  Defendant is liable as a secondary infringer under the Copyright Act for each infringing use of NOA's copyrighted works by Defendant's customers.

46.     In connection with her sale, marketing and distribution of Game Copiers, Defendant, through the Websites, instructs users on how to download material from the Internet, including directing users to third party websites to download pirated copies of Nintendo Games, to load the material into Game Copiers or hard drives, and to play the material on a Nintendo handheld system or Wii console.  Defendant distributes Game Copiers and modifies Wii consoles with the object of promoting their use to infringe NOA's copyrights.

47.     In addition to inducing her customers' infringement of NOA's copyrights, Defendant has actual and constructive knowledge of her customers' infringement of NOA's copyrights, and provides a material contribution to that infringement in the form of, among other things, the sale and distribution of Game Copiers that enable Defendant's customers to play pirated games on their Nintendo handheld systems, and the provision of modification services that allow for the play of pirated games on modified Wii consoles.

48.     Defendant further has the right and ability to supervise and control her customers' infringing activity as set forth above, including without limitation by refusing to distribute Game Copiers and modified Wii consoles.  In addition, at all relevant times, Defendant derived a financial benefit attributable to her customers' infringement of NOA's copyrights.

49.     The foregoing acts of Defendant constitute inducement of infringement, as well as the vicarious and/or contributory infringement of NOA's exclusive rights in its copyrighted works under 17 U.S.C. § 106.

50.     The foregoing acts of infringement by defendant have been willful, intentional and purposeful, in disregard of, and indifferent to, NOA's rights.

51.     As a direct and proximate result of defendant's infringement of NOA's exclusive rights under copyright, NOA is entitled to damages as well as defendant's profits pursuant to 17 U.S.C. § 504(b).

52.     Alternatively, NOA is entitled to the maximum statutory damages, in the amount of $150,000 per infringement, pursuant to 17 U.S.C. § 504(c), or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

53.     NOA further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

54.     Defendant's conduct is causing, and unless enjoined and restrained by this Court will continue to cause, NOA great and irreparable injury that cannot fully be compensated for or measured in money.  NOA has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, NOA is entitled to a preliminary and permanent injunction prohibiting further infringements of its exclusive rights under copyright.

## COUNT THREE

### VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT
### (17 U.S.C. § 1201 *et. seq.*)

55.     NOA realleges and incorporates by reference paragraphs 1-54.

56.     Defendant is actively engaged in the business of marketing, importing, offering to the public, providing, or otherwise trafficking in Game Copiers.  Game Copiers are used, by Defendant and others, to circumvent the technological measures that effectively control access to

copyrighted works and protect NOA's rights as a copyright owner.  The technological measures employed by Nintendo were intended to, and effectively do, control access to copyrighted works and protect NOA's rights as a copyright owner.

57.     Game Copiers (a) are primarily designed or produced for the purpose of circumventing technological measures that effectively control access to works protected by copyright, or that effectively protect NOA's rights as a copyright owner; (b) have only limited commercially significant purpose or use other than to circumvent such technological measures; or (c) are marketed by Defendant, acting alone or in concert with others, for use in circumventing such technological measures, in violation of 17 U.S.C. §§ 1201(a)(2) and 1201(b).

58.     Defendant knows or has reason to know that offering to the public, providing, or otherwise trafficking in Game Copiers is unlawful, and that the purpose and use of the Game Copiers that she markets, imports, offers to the public, provides, or otherwise traffics in is to circumvent a technological measure that effectively controls access to a copyrighted work. Defendant's actions are willful, and are taken for Defendant's own commercial advantage or private financial gain.

59.     Defendant knows or has reason to know that circumventing a technological measure that effectively controls access to a copyrighted work is unlawful.  Defendant's actions are willful, and are taken for Defendant's own commercial advantage or private financial gain.

60.     Defendant also, with the intent to induce, enable, facilitate, or conceal infringement, provides copyright management information that is false.  Defendant has configured the Game Cards that she distributes to display certain images on the screens of Nintendo handheld devices  – which images Defendant calls "skins" – in which NOA holds copyrights, but which Defendant has configured to bear a copyright legend "(c) HACKYOURCONSOLE.COM", which falsely indicates that Defendant and/or her business

holds a copyright in those images.  Defendant's provision of such false copyright management information violates 17 U.S.C. § 1202(a).

61.     Defendant's violations have injured and will continue to injure NOA.  NOA is entitled to recover its actual damages and Defendant' profits resulting from Defendant' wrongful conduct, pursuant to 17 U.S.C. § 1203(c)(2).  Alternatively, NOA is entitled to statutory damages pursuant to 17 U.S.C. § 1203(c)(3).

62.     Defendant's wrongful conduct has caused and will continue to cause NOA irreparable harm, and NOA has no adequate remedy at law to redress any continued violations.  Unless restrained by this Court, Defendant will continue to violate the Digital Millennium Copyright Act.  NOA is entitled to injunctive relief pursuant to 17 U.S.C. § 1203(b)(1) and to an Order impounding any materials involved in Defendant' violation of the Digital Millennium Copyright Act pursuant to 17 U.S.C. § 1203(b)(3).

63.     NOA also is entitled to recover its attorneys' fees and costs of suit pursuant to 17 U.S.C. § 1203.

## COUNT FOUR

### TRADEMARK INFRINGEMENT
### (The Lanham Act, 15 U.S.C. §§ 1114 and 1125(a))

64.     NOA realleges and incorporates by reference paragraphs 1-63.

65.     NOA owns federal registrations for the trademarks identified at Exhibit B. These registrations are in full force and effect and are enforceable.

66.     In connection with her sale, marketing and distribution of Game Copiers, Defendant uses NOA's federally registered trademarks throughout the Websites to promote her business of selling Game Copiers, reproducing and distributing pirated copies of video games, and modification of Wii consoles, including Nintendo's famous Mario and Pokémon marks, thereby infringing NOA's registered trademarks.

67.     When a Game Copier is used as directed by Defendant, it will cause Nintendo's federally registered logo to appear on the screen of the Nintendo DS.

68.     Defendant's actions constitute use in interstate commerce of a false designation of origin, false or misleading description of fact, or false or misleading representation of fact that is likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of the goods and services with Nintendo, or as to the origin, sponsorship, or approval of the goods and services provided by Defendant in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

69.     Defendant's actions also constitute the making or use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of a registered trademark of NOA in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion or mistake, or to deceive, in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114.

70.     Defendant knew or should have known of NOA's rights, and Defendant's infringement has been knowing, willful, and deliberate, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

71.     The infringing acts alleged above have a foreseeable effect on U.S. commerce.

72.     NOA has been and continues to be damaged by Defendant's wrongful acts in a manner that cannot be fully measured or compensated in economic terms, and NOA has no adequate remedy at law.  Defendant's acts have damaged, and threaten to continue to damage, NOA's reputation and goodwill.

73.     Defendant's infringement will continue unless enjoined by the Court.

74.     The interests of and links to U.S. commerce are strong in relation to those of other nations given that, among other things, enforcement of NOA's rights under the Lanham Act does

not conflict with, but rather supports, the interests of other countries in enforcing Nintendo's similar rights under the laws of those countries, and the significance of Defendant's illegal acts is greatest in the United States because NOA is a U.S. corporation with a general sales territory in the Western Hemisphere, including the United States.

## COUNT FIVE

### UNFAIR COMPETITION
### (Florida Statutes Section 501.204)

75.     NOA realleges and incorporates by reference paragraphs 1-74.

76.     The acts of Defendant complained of herein constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade commerce within the meaning of Section 501.204 of the Florida Statutes.

77.     Defendant's acts have been willful and persistent and, as a direct and proximate result of Defendant's violations of Section 501.204 of the Florida Statutes, NOA has suffered and will continue to suffer both damages and irreparable harm for which NOA has no adequate remedy at law.  Unless enjoined, Defendant will commit further violations.

### PRAYER FOR RELIEF

NOA seeks the following relief:

1.     An award of compensatory damages, including consequential and incidental damages, in an amount to be proved at trial.

2.     An award of statutory damages as allowed by law, in an amount up to $150,000 for infringement of each Nintendo copyrighted work, up to $2,000,000 for infringement of each Nintendo trademark, up to $2,500 for each violation of 17 U.S.C. § 1201, and up to $25,000 for each violation of 17 U.S.C. § 1202.

3.     An award of enhanced damages or profits, whichever is proved greater, pursuant to section 35 of the Lanham Act, 15 U.S.C. § 1117, and as

otherwise provided by law.

4.    An award of attorneys' fees and costs.

5.    An award of prejudgment and post-judgment interest at the maximum rate allowed by law.

6.    An accounting of all Game Copiers that were or are within Defendant's possession, custody or control.

7.    An accounting and an award to NOA of Defendant's profits, gains, or unjust enrichment in an amount to be proved at trial.

8.    An accounting of all Defendant's receipts and disbursements, profit and loss statements, and other financial materials, statements, and books relating to Defendant's importation, distribution, marketing or sale of any Game Copier, Defendant's distributions of any pirated copies of video games in which NOA holds copyrights, and Defendant's provision of modification services by which she or her agents or employees modified Wii consoles.

9.    A preliminary and permanent injunction pursuant to 17 U.S.C. §§ 1203 and 502, and 15 U.S.C. § 1116, enjoining Defendant, her agents, servants, and employees, and all those in active concert or participation with Defendant, from:

a)    importing, manufacturing, offering to the public, providing, using or otherwise trafficking in any technology, product, service, device, component or part thereof (including Game Copiers), that is primarily designed or produced to circumvent a technological measure that effectively protects NOA's rights as a copyright owner, or controls access to any work in which NOA holds a registered copyright;

b)    importing, manufacturing, offering to the public, providing, using or otherwise trafficking in any technology, product, service, device, component or part thereof (including Game Copiers), that has only limited commercially significant purpose or use other than to

circumvent a technological measure that effectively protects NOA's rights as a copyright owner, or controls access to any work to which NOA holds a registered copyright;

c)      importing, manufacturing, offering to the public, providing, using or otherwise trafficking in any technology, product, service, device, component or part thereof (including Game Copiers), that is marketed by Defendant or others acting in concert with her for use in circumventing a technological measure that effectively protects NOA's rights as a copyright owner, or controls access to any work to which NOA holds a registered copyright;

d)      using, or inducing or enabling others to use, any reproduction, counterfeit, copy, or colorable imitation of NOA's trademarks, including those identified at Exhibit B, in any manner in connection with the manufacture, printing, distribution, advertising, offering for sale or sale of any goods or merchandise, including the use of Nintendo's trademarks in connection with a website;

e)      using, or inducing or enabling others to use, NOA's trademarks, including those identified at Exhibit B, or any reproduction, counterfeit, copy, or colorable imitation of said marks in any manner likely to cause others falsely to believe that Defendant's products are connected with Nintendo or legitimate Nintendo products bearing NOA's trademarks when they are not, including the use of Nintendo's trademarks in connection with a website;

f)      using, or inducing or enabling others to use, any reproduction, counterfeit, copy, or colorable imitation of NOA's copyrights, including those identified at Exhibit A, in any manner in connection with the manufacture, printing, distribution, advertising, offering for sale or sale of any goods or merchandise, including the use of Nintendo's copyrights in connection with a website;

g)      copying, distributing, or otherwise using any portion of NOA's copyrighted software code or audiovisual works, or any derivative thereof, in any manner in the manufacture,

assembly, distribution,  advertisement, promotion, offering for sale, or sale of goods, services or merchandise;

h)       selling, distributing, lending, publicly performing or playing any unauthorized copy of any NOA copyrighted work;

i)       importing, exporting, shipping, delivering, distributing, transferring, returning, holding for sale, destroying, or otherwise moving, storing or disposing of any Game Copiers or any other item or product bearing or used to reproduce any unauthorized reproduction, counterfeit, copy or colorable imitation of NOA's trademarks and/or NOA's copyrights;

j)       destroying, transferring, altering, moving, returning, concealing, or in any manner secreting any and all Game Copiers, and any and all Documents and records, including without limitation computer tapes, computer disks, business records, emails, supplier names and addresses, shipment records, books of accounts, receipts, specifications, packaging and containers, and other documentation relating or referring in any way to the importation, manufacturing, offering to the public, providing, using, or otherwise trafficking in Game Copiers;

k)       marketing, selling, importing, supplying or otherwise providing any product, device, or component thereof that contributes to or induces the copying of NOA's copyrighted software; and

l)       unfairly competing with Nintendo.

10.       Preliminary and permanent injunctive relief, such as may later be requested before or at trial, requiring Defendant and all persons or entities in active concert or participation with Defendant, immediately to:

a)       identify every one of her suppliers of Game Copiers; and

b)      take steps to ensure that all Game Copiers in Defendant's possession, custody, or control or that are in shipment to Defendant are immediately seized, inspected, and delivered into NOA's possession.

11.      An Order pursuant to 17 U.S.C. §§ 1203 and 503 and 15 U.S.C. § 1116 providing for the seizure, impoundment, and destruction of all Game Copiers within Defendant's custody, possession or control.

12.      An Order requiring Defendant to file with the Court and serve upon Nintendo within ten (10) days after the issuance of any injunction a written report, under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction.

13.      An Order that the www.HackYourConsole.com domain name be transferred to Nintendo.

14.      An Order permanently enjoining Defendant from using any Nintendo trademarks in any website domain name or URL.

15.      Such other relief as the Court deems just and proper.

## JURY DEMAND

NOA demands a trial by jury of all issues so triable.


Dated:  August 6, 2013                    Respectfully submitted,

                                          By: s/Karen L. Stetson
                                          Karen L. Stetson (FL Bar No. 742937)
                                          GRAY ROBINSON, P.A.
                                          1221 Brickell Avenue
                                          16th Floor
                                          Miami, Fl 33131
                                          Telephone: (305) 416-6880
                                          Facsimile: (305) 416-6887
                                          E-Mail: karen.stetson@gray-robinson.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JENNER & BLOCK LLP
Kenneth L. Doroshow (*Pro Hac Vice to be filed*)
1099 New York Ave., N.W.
Suite 900
Washington, DC 20001
Telephone:  (202) 639-6027
Facsimile: (202) 639-6066
E-Mail: KDoroshow@jenner.com
*Attorneys for Plaintiffs*