UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| NINTENDO OF AMERICA INC., a Washington corporation<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ESTEPHANY VALLECILLO, a.k.a. Stephy Sanrio, d/b/a www.hackyourconsole.com<br><br>　　　　　Defendant. | Case No. 1:13-cv-22813-KMW<br><br>**STIPULATED ORDER AND PERMANENT INJUNCTION** |

Plaintiff Nintendo of America Inc. ("NOA") and Defendant Estephany Vallecillo have agreed to a settlement of their dispute and stipulate to the entry of this Order and Permanent Injunction.

It is hereby ORDERED:

1.　This Court has jurisdiction over the parties and the subject matter of this action, and venue is proper in this Court.  Defendant consents to the jurisdiction of this Court for the purpose of entering this Stipulated Order and Permanent Injunction.

2.　NOA is a Washington corporation headquartered in Redmond, Washington.  NOA is a wholly-owned subsidiary of Nintendo Co. Ltd. ("NCL"), a Japanese company headquartered in Kyoto, Japan (collectively, NOA and NCL are referred to herein as "Nintendo").

3.　Defendant Estephany Vallecillo (a.k.a. Stephy Sanrio) is an individual.  Defendant Vallecillo previously did business in this District as www.HackYourConsole.com and

www.facebook.com/HackYourConsole (hereinafter "the Websites"). Through the Websites, Defendant Vallecillo was engaged in the businesses of: (a) importing, marketing, and trafficking in devices known as Game Copiers, (b) modifying Wii video game consoles to circumvent technological protection measures in the consoles, and (c) distributing unauthorized copies of copyrighted video games. Defendant Vallecillo represents and warrants that she has voluntarily ceased all such activities during the pendency of this lawsuit.

4. Nintendo produces a number of popular handheld video game systems including the Nintendo DS, Nintendo DS Lite, Nintendo DSi, and Nintendo DSi XL, as well as the Nintendo 3DS and Nintendo 3DS XL (collectively, the "Nintendo handheld systems"). The Nintendo handheld systems are dual-screen handheld portable video game systems featuring a clamshell design with two LCD screens inside, the bottom one a touch screen. A user plays a video game on the Nintendo handheld systems by inserting an authorized game cartridge (referred to herein as "Nintendo Game Card") into the Nintendo handheld system for game play or by downloading the game through Nintendo's proprietary *DSiWare* service for the Nintendo DSi handheld system and the Nintendo eShop for the Nintendo 3DS system.

5. NOA does not authorize and has never authorized the copying or downloading of Nintendo video games onto devices, such as Game Copiers, that can mimic authorized Nintendo Game Cards and bypass the security measures that protect the Nintendo handheld systems and the rights of NOA as a copyright owner. NOA does not authorize and has never authorized Nintendo video games to be copied onto personal computers or to be downloaded from personal computers to devices like Game Copiers.

6. Nintendo and its authorized licensees have created and published many popular video games specifically and exclusively for play on Nintendo video game systems, referred to

2

herein as "Nintendo games." Nintendo holds copyright and trademark rights in and to various Nintendo games, Nintendo video game systems, and video game characters, including, without limitation, those copyrights and trademarks listed on Exhibits A and B of Nintendo's Complaint.

7. Defendant has imported, marketed, and trafficked in products that may be used to circumvent the technological security measures in the Nintendo handheld systems. These products include those sold under the brand names including, but not limited to, Acekard 2i, DSTWO, R4i Gold, R4i RTS Lite 20l3, R4i-SDHC 3DS RTS, and R4 SDHC Dual Core. These products are used to play pirated games on the Nintendo handheld systems, and are referred to herein as "Game Copiers."

8. The Game Copiers that Defendant received and sold enable those who use them to download games to portable memory storage devices and to circumvent the technological measures employed by Nintendo to control access to its copyrighted works and to protect its rights as a copyright owner.

9. Game Copiers typically employ (1) a game card (referred to herein as the "Game Copier Card") that is substantially the same shape, and has substantially the same electrical connection configuration, as a Nintendo Game Card, so that a Game Copier Card fits perfectly in the Nintendo handheld systems; and (2) a memory device that can hold multiple Nintendo games and that is inserted into the Game Copier Card for game play.

10. When so configured, Game Copiers can be used to bypass Nintendo's technological security measures and gain the same access to the Nintendo handheld systems, and to certain of NOA's copyrighted programs, as an authorized Nintendo Game Card. Because Game Copier cards can accommodate portable memory devices that hold enormous amounts of data,

3

hundreds of pirated games may be downloaded onto just one Game Copier card, enabling the user to play any of these pirated games on Nintendo handheld systems.

11. Game Copiers cause Nintendo great harm. Just one Game Copier enables the use of portable memory with storage capacities that allow the Game Copier to act as a vehicle to play hundreds of unauthorized copies of copyrighted Nintendo games. Game Copiers harm Nintendo's goodwill, detract from Nintendo's consumer base, and enable widespread illegal and undetectable copying.

12. Nintendo has never authorized any Game Copiers, and the specific brands of Game Copiers sold by Defendant were not authorized by Nintendo or on its behalf. Defendant has agreed to discontinue the sale of any such Game Copiers and to voluntarily submit to an injunction to give Nintendo future assurance that Defendant will not import, market, or traffic in Game Copiers in the future.

13. Defendant Vallecillo also provided a service to users of Nintendo's Wii video game console ("Wii") by which she modified the hardware and/or software on the Wii to circumvent the technological protection measures built into the console, and thereby allowed users to play unauthorized copies of video games on the Wii. Along with this service – known as Wii "modding" – Defendant made and distributed to customers "game bundles," each of which contained hundreds of unauthorized copies of copyrighted videogames designed for play on the Wii.

14. The security systems in the Wii console and the Nintendo handheld systems are technological measures that effectively control access to a copyrighted work under sections 1201(a) and 1201(b) of the DMCA. Game Copiers and Wii modding defeat the control over access to Nintendo's copyrighted works that is exercised by these technological measures.

15. Game Copiers and Wii modding are primarily designed for circumvention of technological measures that effectively control access to a copyrighted work (17 U.S.C. §§ 1201(a)(2)(A) and 1201 (b)(1)(A)), have limited commercially significant purpose other than such circumvention (satisfying sections 1201(a)(2)(B) and 12101(b)(1)(B)), and are marketed to be used for such circumvention (satisfying sections 1201(a)(2)(C) and 1201(B)(1)(C)).

16. Defendant's Websites previously displayed certain of Nintendo's registered trademarks and copyrights. In addition, the Websites incorporated Nintendo's trademarked logo and characters. Defendant has agreed to discontinue, and has discontinued, any further use of the Websites, and to transfer ownership of the Websites to Nintendo.

17. As part of an overall settlement, Defendant agrees to be bound by an injunction defined as set forth below.

## PERMANENT INJUNCTION

**IT IS HEREBY ORDERED** that Defendant, her officers, agents, servants, employees, attorneys, any persons involved in the operation of the websites www.HackYourConsole.com and www.facebook.com/HackYourConsole, and any other persons acting in active concert or participation with any of them who receive actual notice of this Permanent Injunction, be, and hereby are, immediately enjoined and restrained from:

a) Importing, manufacturing, offering to the public, providing, selling, or otherwise trafficking any technology, product, service, device, component or part thereof (including Game Copiers), that is primarily designed or produced to circumvent a technological measure that effectively protects NOA's rights as a copyright owner, or controls access to any work in which NOA holds a registered copyright;

b) Importing, manufacturing, offering to the public, providing, selling, or otherwise

trafficking in any technology, product, service, device, component or part thereof (including Game Copiers), that has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively protects NOA's rights as a copyright owner, or controls access to any work to which NOA holds a registered copyright;

      c)      Importing, manufacturing, offering to the public, providing, using or otherwise trafficking in any technology, product, service, device, component or part thereof (including Game Copiers), that has ever been marketed by Defendant or others acting in concert with her for use in circumventing a technological measure that effectively protects NOA's rights as a copyright owner, or controls access to any work to which NOA holds a registered copyright;

      d)      Using, or inducing or enabling others to use, any reproduction, counterfeit, copy, or colorable imitation of NOA's trademarks, including those identified in Exhibit B of NOA's Complaint, in any manner in connection with the manufacture, printing, distribution, advertising, offering for sale or sale of any goods or merchandise, including the use of Nintendo's trademarks in connection with a website;

      e)      Using, or inducing or enabling others to use, NOA's trademarks, including those identified in Exhibit B of NOA's Complaint, or any reproduction, counterfeit, copy, or colorable imitation of said marks in any manner likely to cause others falsely to believe that Defendant's products are connected with Nintendo or legitimate Nintendo products bearing NOA's trademarks when they are not, including the use of Nintendo's trademarks in connection with a website;

      f)      Using, or inducing or enabling others to use, any reproduction, counterfeit, copy, or colorable imitation of NOA's copyrights, including those identified in Exhibit A of NOA's Complaint, in any manner in connection with the manufacture, printing, distribution, advertising, offering for sale or sale of any goods or merchandise, including the use of Nintendo's copyrights in connection with a website;

g) Copying, distributing, or otherwise using any portion of NOA's copyrighted software code or audiovisual works, or any derivative thereof, in any manner in the manufacture, assembly, distribution, advertisement, promotion, offering for sale, or sale of goods, services or merchandise;

h) Selling, distributing, lending, publicly performing or playing any unauthorized copy of any NOA copyrighted work;

i) Importing, exporting, shipping, delivering, distributing, transferring, returning, holding for sale, destroying, or otherwise moving, storing or disposing of any Game Copiers or any other item or product bearing or used to reproduce any unauthorized reproduction, counterfeit, copy or colorable imitation of NOA's trademarks and/or NOA's copyrights;

j) Destroying, transferring, altering, moving, returning, concealing, or in any manner secreting any and all Game Copiers, and any and all Documents and records relating or referring in any way to the importation, manufacturing, offering to the public, providing, using, or otherwise trafficking in Game Copiers;

k) Marketing, selling, importing, supplying or otherwise providing any product, device, or component thereof that contributes to or induces the copying of NOA's copyrighted software; and

l) Unfairly competing with Nintendo.

In addition, Defendant must within 30 days of this Order:

a) Provide to NOA every Game Copier in Defendant's custody, possession or control, and ship or otherwise deliver all such Game Copiers to NOA for destruction, at NOA's expense;

b) Provide NOA with copies of all documents in Defendant's possession that regard or refer to Game Copiers; and

c) Transfer, or cause the relevant domain name registrar to transfer, or to cooperate in

7

the transfer by the domain name registrar to Nintendo, the ownership and control of the websites located at the URLs ww.HackYourConsole.com and www.facebook.com/HackYourConsole, with Nintendo paying any costs associated with such a transfer.

DONE AND ORDERED At Miami, Florida, this \_\_\_\_ day of September, 2013.

_____
UNITED STATES DISTRICT JUDGE

cc: Counsel of Record